Allen v. City of New York Good morning, Your Honor. May it please the court, my name is Jesse Rose and I represent the plaintiff appellant Lionel Allen, who appeals from the decision of the lower court to dismiss his claims under Title VII and the New York State Human Rights Law for discrimination and retaliation. The court erred in dismissing Mr. Allen's claims because they misapplied, the court misapplied the facts, and then misinterpreted the law. Mr. Allen started working for the Department of Environmental Protection in the Kensico region at the Shaft 18 Valhalla location. They're responsible for testing the water that comes into the city, determining that the quality is appropriate and the appropriate amount of chemicals is there. Mr. Allen, since 1989, was the only black employee working for the Bureau of Water Supply where he worked. He applied for promotion throughout his employment. Many, many times. Within the statute of limitations, the district court found that he had applied for 12 separate positions. He'd never received, in the over 20 years that he worked there, a single promotion. After that long, he went, with his union representative, to three managers. Not his direct manager, but the managers over them, Mr. Massey, Mr. Doniger, and Mr. Markatelli. Mr. Don- You can assume we know the facts. Okay. You're challenging five of these promotions now on this appeal, right? Yes, your honor. And the issue is whether the district court erred in thinking that you failed to satisfy the qualification requirement of the prime facia case. So why don't you tell us what you think is the error by the district court? Well, your honor, the defendants in their rule 56 statement of facts admitted that he qualified for the position. I'm not sure I saw that. Four of the positions were for supervisor of watershed maintenance. And that required three years of experience, including one year at the supervisory level. And my understanding was that there's no disputed fact that your client did not have supervisory experience. Did I miss something? Well, no, your honor. You didn't miss that that's what the documents state. But what's actually put into practice is very different. Right. And you argue that it was not a bona fide job requirement, right? Yes, your honor. And defendants admitted it. In paragraph 187, it's in the record A83, it's one of their statements of undisputed material facts. That plaintiff qualified for these positions. That was consistent with Mr. Marchitelli's deposition testimony. Yes, your honor, and he's the one who made the decision that Mr. Allen was not going to receive those promotions. Mr. Allen was the only black person applying for these jobs throughout the time. They were all given to white employees because he was the only non-white employee in the location. So, the district court also erred in determining that there was no inference of discrimination to establish the prima facie case. This court found in Paul V. Wyeth Farms that an individual who applies for multiple promotions and is denied those promotions, and those promotions are then given to people outside of his protected class, that establishes an inference of discrimination. The district court found that that was not enough, but this court should find that it is in reverse. Defendants responded with what they contend was a legitimate non-discriminatory reason for their decision not to give Mr. Allen the positions. For one of the supervisory positions, they said that he had withdrawn his application. This is something Mr. Allen directly disputes. He says, no, I did not withdraw my application. I wanted this job. I don't care about the schedule. Mr. Marchitelli said that that's not the case, that Mr. Allen unilaterally withdrew it. That is the only non-discriminatory reason that was offered by a fact witness in the case. I don't- That says to the 2007, or what the district court described as the 2007 supervisor of watershed maintenance application, correct? Yes, your honor. There are three others, and there's also assistant dam inspector positions. Those four positions- Let's just stick to the 2007 application for now. The other argument is that Mr. Siciliano, do I have that correct, was more qualified. Yes, your honor. That's not something that Mr. Marchitelli claimed who actually made the decision. And even if we are to consider that argument as something created after the fact, Mr. Siciliano, there's nothing in the record that's admissible to say that he had any experience. The only evidence that was submitted- He'd been the acting supervisor. The only person who said that in the record was Grace Pigott, somebody who wasn't identified in discovery and submitted an affidavit that- He was there for 11 years, two longer? He was there for 11 years, yes. And there was no evidence submitted that he had this experience until summary judgment was filed in an affidavit by Grace Pigott, which the district court found was inadmissible because she had never been identified. And none of this evidence had ever been submitted previously. So there's no way to vet this because it was provided only after the summary judgment motion had been filed. No notice is what you're saying. No notice. Regardless, even if we had notice, you can look at this. It's not a requisite job requirement that he have that experience. But Mr- It was in the written job qualifications. You're saying that they didn't really treat it as part of that. And Mr. Marcatelli didn't consider that to be a requisite. And he testified as much. But- But he didn't consider supervisory experience to be a requirement? That was his testimony. And the individual who got the job, they claimed that there were these other elements in his experience that would justify giving him the job over Mr. Allen. They're nowhere in the job posting. There's nothing about this job that the defendants can point to that says having an additional degree or having experience in this other area will somehow benefit the position. So I understood that Mr. Marcatelli's testimony was that Mr. Allen met the requirements, satisfied the requirements of the job. He didn't specifically say you don't need supervisory. I believe the testimony, and it's going back a while since the deposition, was that not every requirement that's listed in the job posting is necessary. Most of the people who were promoted to the supervisor watershed maintainer position were watershed maintainers and didn't have supervisory authority at the time of the experience. My concern is that Marcatelli's statement is that your client had the basic requirements. And there was no discussion of what he was referring to there. The posted position required one year of supervisory experience, and I had understood Mr. Siciliano had it by virtue of his acting supervisory experience. And your client did not. And so I'm not sure I'm understanding how you think that the Marcatelli statement somehow precludes them from saying you didn't meet their job qualifications. They didn't give the job to someone who didn't have supervisory experience. That's the Olichino circumstance. Either it was a requirement and your client didn't have it, or Mr. Siciliano was more qualified than he. By virtue of having this extra experience. Well, your honor, the acting position was given to him by the same managers who were denying Mr. Allen the position. So even if you consider that, this is something, the acting position is not posted. Mr. Allen wouldn't be given the opportunity to apply for it. He's just assigned. So- That's like saying someone had experience at another job or something. However he got it, he had the experience and your client didn't. Yes, your honor, but if the experience is given to him by the same people who then deny Mr. Allen the job, lie about why he doesn't get the job because they claim that he withdrew his application, which he explicitly says he doesn't. Okay, I agree with you that it's somewhat perverse as a factual matter. But the, our law says, suggests that if there is someone for whatever reason who is clearly more qualified or more qualified, then that's the end of the story. Well, I don't think that it says that necessarily, because I think Mr. Allen could create a question of fact that a reasonable jury could point to. And say, you know what, for this position, for the supervisor watershed maintainer's position, Mr. Allen is actually more qualified. Because he's done it since 1989. No, we don't get into that kind of employment decision. It's whether a reasonable employer could consider someone who actually did, had supervisory experience more qualified. Your honor, it's difficult for me to respond to these arguments because I was never notified that this was part of the argument during discovery. The first time that I learned about this was in Grace Pagot's affidavit that was submitted in summary judgment. So to now preclude Mr. Allen from scrutinizing that in some way. Did you complain about the lack of notice to the district court? Yes, and the district court excluded Ms. Pagot's affidavit. But then expressly relies on this experience, believing inexplicably that the record supports it. But in the actual documents, there's nothing to say that he has that experience. It's only Ms. Pagot's affidavit. So I really would like to also move on to the referral for investigation. I think this is really important as to whether it's an adverse. Your client had the obligation to show that he was discriminated against versus the person who got the job. Are you saying your client did not know that Siciliano was acting supervisor? I don't believe so at the time. There are three or six different shifts in multiple locations for watershed maintainers. Mr. Allen worked one shift a couple days a week. I think he worked mostly double shifts. So whether he saw this individual for the period of his acting supervisory term, or whether he took notice of it, it's not part of the record. Right, but this is the comparator, right? This is the person who gets the job that you're saying your client should have gotten. Yes, Your Honor. And you're saying you didn't know what he did before he got the promotion? The first time. And you didn't try to find out whether he had comparable work experience to your client or different work experience? Well, Your Honor, we didn't get that information in discovery before the- Can I ask you about the DOI? You're just going to talk about that for a second. I see you're out of time, but I just want to ask you one question about the DOI referral. Do you claim that's an adverse employment action by itself? Absolutely, Your Honor, and I think it's supported by Second Circuit President, because in Brown v. City of Syracuse- Whenever there's a DOI referral, or circumstances? Well, I think whether it's considered an adverse employment action doesn't mean that it's actionable. It's only actionable if it occurs under an inference of discrimination and retaliation. So yes, if you have a specific procedure for disciplining employees, if they get suspended or if they're disciplined, he was not convicted, Your Honor. He was convicted of the misdemeanors. He was not convicted of a misdemeanor, Your Honor. He received no penalty whatsoever. He pled guilty to a violation, the lowest level that doesn't even require allocution just to make it go away, after he was accused of forgery and charged with two felonies first. Then it was reduced to a misdemeanor, and then he pled guilty to a violation. So- This was a very minor issue. You can't stand in front of us, though, and say, well, it wasn't a truthful plea. Well, Your Honor, I think that there's a difference between what he was referred to, to the DOI, and what he was, what actually happened. In this case, he turned in a jury slip notice that he was provided from the court, and then with that, a leave slip. The leave slip had the wrong month on it. There's no question that this was just a paperwork error. In fact, his direct supervisor, Mr. Compito, who he turned it into and who discussed it with him, said, my analysis of this was that it was just a paperwork error. I didn't think anything else happened. He gave it to his supervisor, Mr. Massey, and Mr. Doniker, one of two, referred it to the Department of Investigations, two individuals who were present when Mr- It's very difficult for you to argue that this is some kind of an actionable claim, when once DOI gets it and looks into it, they refer it to the district attorney's office. And the individuals at DOI are not alleged to know about your client's complaint, right? Well, no, Your Honor, but the district- So, I mean, a matter that is significant enough that DOI, after its inquiry, refers it for prosecution, hardly seems to be the kind of thing in which we could say that this is going to be an actionable basis for retaliation when the employer refers it to DOI. What am I missing here? Well, Your Honor, I think that there are two things that we need to look at. One is what was sent to the Department of Investigations, and that was an allegation of forgery. No one in the record has supported that. In fact, the city ignores it in their brief. They don't even bring up that Mr. Allen was alleged to have forged a document when no one in discovery could point to a document that they believe he had forged. Second, this is a completely different process because it's the difference between criminal prosecution, which the Department of Investigations representative, Mr. Healy, testified they are required to pursue if they find any criminal conduct whatsoever, versus a civil penalty. And what the city provided were two lists. And I know that the district court concluded that in every situation they're required to report this to the Department of Investigation. They concluded that that's the policy, yet the city provided two lists. One of people who had committed crimes similar to Mr. Allen's, false entry of documents, forgery. And they produced a different list, people who were referred for criminal prosecution. And the first list, there are penalties for what people were found guilty of having committed. And in the second list, those names don't match up. So we know that it's not a policy that's regularly enforced. And then, Carla Lowenheim, who was the 30B6 representative produced by the city to provide testimony on behalf of the city, testified that this is not the regular course of action, that regularly allegations of this kind go directly to her. What's the difference? Well, for Mr. Allen, he had complained about discrimination six months prior to the referral to the Department of Investigations. He's the only black employee in the department. All right, I know you want to reserve some time. Yes, your honor. Thank you. Good morning, your honors. May it please the court. My name is Diana Lawless. I appear on behalf of the city of New York. In this case, your honors, the district court properly granted summary judgment to the city. Turning first to the claim about, I believe it was focused on oral arguments, discrimination claim with respect to hiring for the positions at issue. Focused mainly on the supervisor watershed maintainer position. The district court properly found that- Do you dispute that he applied for that position? We take his allegations that he applied. The only records the DOE was able to produce was that he applied for two positions. You don't dispute that he applied for all of these positions? We're taking the allegation, we're taking his failure. But for the DEP provided, the city provided the records for the one person that matched the application, that person was hired. The district court properly found that Mr. Allen did not show he was qualified for the positions at issue. Mr. Martelli in his deposition says he's qualified. He's the person who's a decision maker. Why doesn't that generate a genuine dispute at least? Well, your honor, I believe that both you and Judge Raggi properly characterized the testimony in the earlier argument, which is that he said he was basically qualified. His testimony was silent as to the importance of supervisory experience, was silent as to what he- The district court determined that he was not qualified. Yes, the district court determined that he was not qualified because he did not meet the standards in the position as posted in the- Summary judgment, though, we are required to look at the facts in the light most favorable to the plaintiff. So to the extent there's ambiguity in that statement, at this point, don't we have to read it as that this individual testified that he was qualified? Our position, as indicated in our briefs, was that it was not related to supervisory experience, it was a vague statement. But yes, if your honors were to take it in the light most favorable to him, he still did not state a prima facie case because he made no connection to an inference of race discrimination. So does that mean you're saying that as the record stands, we should not give weight to the fact that he lacked supervisory experience? Your honor should give weight to the fact- How? Because the position's qualifications included supervisory experience as posted. I understand that, but the manager said he was qualified and didn't say but for his lack of supervisory experience. Right, your honor, he basically said basically qualified. We don't know what basically qualified meant. But if we do- That's the ambiguity. Yes, your honor. So it could be that at trial, the manager, Mr. Martelli, says, you know what? I know that it's on paper that we have required a supervisory experience, but as a matter of fact, we have not. And he was qualified to do the job. Is that possible? If it is, yes, it's potentially possible depending on the way that things would possibly- Qualification is not the issue that should have prevented this from going to trial. But we believe that an inference of race discrimination is the issue that would have prevented it from going to trial. And that is because the only thing that the plaintiff has offered here is that he was the only African American employee. And that he believed he was more qualified for the job. We know that he didn't meet the posted qualifications. And we have evidence that the one person, Mr. Siciliano, who was hired for the position, did have different qualifications. It's well settled. So what about that argument? I've mentioned that it's arguably perverse, that you give a head start to one person. By making him an acting supervisor, and then use that fact to make him a permanent supervisor. Why isn't that potentially problematic? Well, your honor, I don't think it's potentially problematic because I think it speaks to what an employer is allowed to do, which is an employer is allowed to take an honest or partially subjective view of the qualifications. All we happen to know here is that this person had been an acting supervisor. Does that translate into an argument that the claim would have to be, not that Siciliano, after being more qualified, got that job, but rather that there was discrimination in giving Siciliano acting supervisory experience and not giving that opportunity to the plaintiff? I think that's right, your honor, that he would have had to make some sort of claim about that, too, in order for, I mean, all he's saying here is I worked there for a very long time. That was just his testimony, and that he believed that that was the reason he needed to obtain this position, which he did not. And were there not statements about, from Mr. Donaker, I believe, and Mr. Barquette, that indicated that they believed that he had been, that Mr. Allen had been discriminated against on the basis of race? Well, your honor, I would just clarify that it was one, I believe, layered hearsay comment from Mr. Barquette. Mr. Barquette, well, Mr. Barquette had his, he testified that he had a gut feeling that Mr. Allen had been discriminated against, that was his actual testimony. And the district court discounted that as speculative? Yes, which is a- And he also referred to a statement by Mr. Donaker. Yes, and he said that, he said that on some specified times, somebody, they discriminated against Mr. Allen, that's layered hearsay. And courts have found, in situations like this, that yes, a hearsay exception would apply to Mr. Donaker's statements. But you can't get around the layered hearsay of talking about plant gossip or a hearsay problem if it is put into the mouth of someone to which a hearsay exception does not apply. Mr. Barquette, you're saying? Yes. Mr. Barquette's statement is the one in the record, not Mr. Donaker's. Was Mr. Donaker deposed? Yes. And did he, was he confronted with the statement, or? I did not, your honor, I did not handle the trial litigation. I don't know what the timing was of the depositions. So I don't know if there was an opportunity. Does that mean he wasn't confronted and you don't know if there was an opportunity? But it's not in his deposition that he's confronted? All I'm saying is that there's no question about that in his deposition. And you're just saying that you don't know? I don't know, right. The parties had already developed the other. Right, I don't know what the timing was. And then, I'll turn your honors to the- Let me just, before you turn to something else, on Mr. Siciliano, your adversary says that there was no notice. Right. Of that argument. So I would point to what, on page five of the special appendix, where the district court explains what it did. With that claim, regarding how the district court decided to handle it, the district court said that because the defendant did not produce a Rule 26 disclosure regarding this witness, that the court would not usually consider substantive statements. There's no reason to eliminate the role simply as a custodian of records. So there's no, basically these records were being put in through her affidavit. So the business records themselves were the ones that said that he had this experience and things like that. And also, this was information- So the records were admitted. Yes, no. I think it was just her affidavit.  There were some records- Just her affidavit was admitted? There were some records attached to the- Finish the sentence. Just her affidavit was what? I'm sorry, your honor. There were records attached to her affidavit. And what was the district court willing to consider and what was it not willing to consider? The district court was willing to consider the statements in the records because, including the statement about the applications, because they were substantiated by the records that were attached. But was there any other record of Mr. Siciliano's position as acting supervisor and the fact that he was more qualified other than Ms. Piggott's declaration? Your honors, I'm realizing this as we're discussing this a little more. I apologize for any misrepresentation on that. I believe that the statements were limited to the statements in her affidavit about her review of the records regarding his qualifications. None of the substantive statements, but rather just her role in connection with reviewing the documents. I'm not sure if I'm understanding your honor's question. What I'm trying to figure out is, your adversary said that notwithstanding the exclusion of most of Ms. Piggott's declaration, or at least the substantive part of the declaration, the district court relied on evidence that seems to have been substantive evidence relating to Mr. Siciliano's, I guess, his greater qualifications than Mr. Allen. To the extent that you mean that it came, that it should not, it was substantive because it was in Ms. Piggott's affidavit itself, it should not have been considered? I'm just confused. So I'm confused about what the district court did with respect to Ms. Piggott's declaration. It seemed that what the district court was trying to do was to say that it will consider the evidence about her role as a custodian of records and not any substantive information. And the substantive information would include Mr. Siciliano's qualifications, correct? It seems that it would be if that is the only information. All right, so that was excluded. So if that was excluded, then- Then what do you have? Well, then we don't, we still, that's not the only position at issue. We still don't believe that Mr- Well, with respect to January 2007, I thought part of your argument rested on Mr. Siciliano's superior qualifications. Yes, your honor, part of our argument did rest- Where is the admissible evidence supporting that? If Ms. Piggott's affidavit and the attached records were not going to be admitted? Yes, your honor, then there would not have been additional admissible evidence on that point, but we believe that that does not change the fact that for all of the positions, Mr. Allen did not come forth with an inference of discrimination for his claims. But that means that we do not have any evidence of Siciliano's status, superiority, etc., right? That would mean that you would, yes, that would be that, your honor. Turning, your honors, to the claims regarding the DOI investigation, as, your honors, we discussed before, the investigation by itself, which was a referral from the employing agency DEP to DOI, which is an independent citywide agency, that by itself, a referral, is not an adverse employment action. Just the- What's the timing of it, though? Well, the timing was, in terms of the retaliation claim? Yeah. The timing was, I believe, about eight months for the referral to happen, but- I thought it was six months, no? I believe it was December 2007 and then May 2008. So six months, yes, your honor, sorry. And that timing in and of itself was not enough because there was a situation where in between, the situation happened with the jury duty papers and the time sheet. That was something that the supervisor saw was a problem. The plaintiff was offered an opportunity to correct the discrepancy there. Even though I know that my adversary relies on his statements that he thought it was just an error, he did see fit to bring it up to his supervisor. His supervisor decided that pursuant to citywide policy for referring things to DOI, that this should be something that should be required to have a referral to DOI. Is it your position, by the way, that a referral to DOI, for whatever reason, is not an adverse employment action? Certainly for, it almost certainly is not for a discrimination claim because- I'm sorry, in connection with a retaliation claim. We believe for a retaliation claim it still would not be, but the district court did say that there could be, because it could dissuade. Potentially, it could dissuade him from making an act. But still, we believe that there is still not a connection. He made no connection to show discriminatory or retaliatory animus in this case. On the retaliation side, I believe that he just charged, he just pointed to one comparator who was inside of his class, who he believed was also criminally charged. And he did not point to relevant comparators outside his class who did not engage in a particular activity who were treated differently. And I just want to make a point about the two lists that we discussed on the discrimination claim. The two lists were, there's no races listed. There's no admissible evidence about the race of the people involved in this case. Well look, does anybody dispute that he's the only black person in the area? No. Well, there may have been one other person. Right, but I believe the lists were a greater list of DEP employees. Because he does at least point to one other comparator for the purpose of his retaliation claim. But the lists are, they're made by discovery request employees who made some kind of false entries or statements from 2007 to 2010. And I do want to make a correction about what we said in our brief about the second list, which is really not evident from looking at the list. It is actually, I think we classified it as employees who referred from DEP to the DA's office. That obviously is something that would not happen. It's actually DEP employees who were referred by DOI to the DA's office. So there's no connection to DEP and anything that DEP had control over. This here was a investigation pursuant to city policy that was a mandated city policy. And that's why the investigation took place and there's no inference of discrimination or retaliation as a result of it. If your honors have no further questions, I would ask that this court affirms the district court's grant of summary judgment. Thank you. Rose, you reserved some rebuttal time. Yes, I did. Thank you, your honors. Primarily, the city has repeatedly said that Mr. Allen can't establish that there's an inference of any discrimination. I would say that that is absolutely false, because we've provided evidence from two different supervisors. One, Mr. Barquette, who testified that based on his observations of what happened and his 24 years working for the city, he believed that what happened to Mr. Allen was because of his race. That's a conclusory statement. Isn't he going to have to be able to substantiate that more? I'm not sure whether a conclusory statement is going to be enough. Yes, your honor, a trial, absolutely. But for the purposes of summary judgment, Terry V. Ashcroft- You have to adduce sufficient evidence to let the jury reach a conclusion in your favor. And if all you've got is his conclusion, which is what you've proffered, I'm not sure that's enough. Your honor, in Terry V. Ashcroft, this court found that a long-term employee's statement that he believed, or co-worker, that he believed that something that happened to this plaintiff was based on discrimination, was sufficient to create a question of fact, or an inference of discrimination, at least, within the analysis- Did Mr. Barquette provide specific examples? He did not during the deposition. At the very end, this was on my follow-up after the questioning, I asked him what had happened. He also, at that point, told me about Mr. Doniger's admission. Now, Mr. Doniger was a manager for the city. He's clearly acting on behalf of the city, so any statement that he makes is a party admission. Mr. Barquette relayed that admission. That is not hearsay, because it's an admission by a party opponent being offered against their interests. There's no basis to conclude that it's hearsay, although the district court did that, and I think that was inappropriate. In addition to that, we have the affidavit from Mr. Catala. Mr. Catala was not deposed in this case. He provided an affidavit that said, for 18 years, he's been a union representative. He provided an example of another minority who was also subject to a DOI investigation based on a minor infraction that was outside of the normal disciplinary processes. And he said that based on his analysis of the situation and his experience, that what happened to Mr. Allen was because of his race and because of his complaint of discrimination. And defendants make very little mention of the temporal nexus here. He was referred to the DOI six months after he made a complaint of discrimination. But as the government says, it was in the intervening time that he submitted a document that contained an inconsistency that raised a concern.  But for that, I mean, it's not as if you've got a circumstance where they went looking for any lame excuse. Your client provided this, and as I understand it, then was given an opportunity to correct? Did I understand that correctly? Your Honor, the opportunity to correct was minimal, and I think that it was- Nevertheless, you know, that the chain of events goes from he submits this, and he ultimately winds up pleading to a violation to it. Yes, but after he was accused of forgery, after he was charged with two felonies, after that was reduced to, after they found that there was no basis for the conclusion. But regardless, even if what he did was completely wrong- No basis for what conclusion? For the conclusion that he had forged a document. Nobody testified that that's the case. That's quite different. I mean, basically this was a plea bargain. After the charges reduced to go from a felony to a violation, that's like going from an assault charge to a speeding ticket. There's a significant difference there, including that he didn't have to allocute on the record. He never admitted that he did anything wrong. But regardless, theft of time issues, which is what, at the heart of this, Mr. Allen was accused of doing. He was accused of asking for time that he wasn't justified in doing. Never mind that there is nothing in the record to show that he violated the jury leave policy. Let me ask you, given his acknowledgment or his plea to the violation, what are the damages for the retaliation? But the fact that he was submitted to a criminal charge instead of the several- He was never charged criminally. It was a referral for possible forgery. Yes, sir. There was no criminal charge. So what are the damages? The compensatory damages for having to go through that process, for being arrested at work. And languish and-  Every aspect of this screams that the court has to take a position as to what an employer can do in referring people for criminal prosecution. The DOI has as a mandate that they must refer for criminal prosecution if possible. For the court to allow this to not be an adverse employment action, or to say that this is permissible, then any employer could send any subset, any protected class of individuals accused of any misgivings. Petty larceny, stealing time for criminal prosecution, and then the people outside of that protected class not for criminal prosecution. That's really what's at issue here. Why was Mr. Allen treated differently? And the jury should decide whether it's because of his race and his complaints of discrimination, and it should not be decided by the judge. In terms of looking at the comparators, though, if I remember correctly, with respect to at least conduct of this severity, there is a white employee who's also charged. Who's also referred. The only white employee that we believe to be white was, I can't give the name, but she was accused of stealing $26,000. I understand that. I understand that. So outside of the realm of three days on a jury leave slip, when the court provided him, and the record shows that the court provided him the slip saying you're going to be on duty these days. I understand the difference in $26,000, but I'm not sure I view false claiming of time for jury services as trivial or laughable as you suggest, okay? I don't suggest that it's laughable, but I do suggest that an employer that sends white coworkers who have actually forged and admitted to forging doctor's notes in order to take time away from their employer, that that individual shouldn't be subject to the same disciplinary policy as Mr. Allen, because that's a comparable crime. And the district court did find, as a matter of law, that these are not comparable. But the Second Circuit's held that that's a decision for the jury. It's a question of fact as to whether you can compare two people, whether they're similarly situated. So I think that this is something that just must go to a jury to analyze the facts. Thank you. Thank you, your honors. The last case on our calendar is on submission, so we stand adjourned.